Ruffin, J.
delivered the opinion of the Court:
My doubts in this case, were, at first, considerable,— ■Whether the Plaintiff could have a certiorari. But, upon further consideration and on examination of the act of Assembly of 1796, c. 29, I think he can. The act evidently contemplates an ex parte proceeding. It does net- *186 direct any process or notice to the administrator; and . , , r , i'll- • , , , indeed, from the nature or the thing, no notice could be g,ven to the administrator ; because the widow’s petition is to be filed at the same Court that letters of administration are granted.; Indeed, it must have been well understood by the Legislature, that if an adversary suit was prescribed between the widow and the administrator for her year’s allowance, the provision intended for hei»by the act, would most commonly fail, and the act be nuga<* tory ;—;For she herself is entitled to administration and generally does administer, and she could not sue herself. But the allowance given by the act is not made to depend On her administering or on another’s doing so. It is given from the necessity of the case and was intended to relieye her immediate wants. She is equally entitled to it in both instances. And I think that it may be laid down as a safe rule, that every person affected in interest by ex parte proceedings' in an inferior Court, shall have, upon a proper case, a certiorari. Their rights shall not be concluded by an ex parte transaction ; but they shall have an opportunity of a trial, the writ of certiorari, being the only remedy they shall have. Another objection occurred, however, to me, upon this part of the case : and that was, whether the next of kin have such an interest as give them the right to the writ. A distributive sharé is not, properly speaking, a legal right, bat an equitable one. It is a trust, and a Court of Law cannot take no* tice of it. Upon this ground, I should have perhaps been against allowing the writ. But the act itself tak' sr n nice of their interest, by expressly exonerating the ad-tninstrafor from accountability for the amount of the allowance to the “claimants upon the estate of the deceased as creditors.” The claimants here spoken of are clearly contradistinguished from creditors, and plainly mean the next of kin ; whose interests are thereby made, quá ad hoc, legal rights,1 which this Court can protect.
*187 ttpon ttie other point, Whether the allowance made in Ais case, was a proper one, I have no doubt. It never couid have been intended that the widow should be allowed a support for her slaves and stock which she obtained, as her part of her husband’s estate, or otherwise acquired after the death of the husband. Indeed* the «Vio .vanee is generally made long before administration of tVte intestate’s estate takes place, and, therefore, Could not embrace her share thereof. The act contemplated a relief to her immediate and pressing necessities. But the construction contended for, in her behalf, would make her wealth and ability to relieve her own necessities withodt assistance, a ground for a larger claim. The true construction of the law seems to me to be, that the widow shall be allowed a reasonable, that is, an easy and comfortable subsistence for herself and children and their ne-eessarv servants ot attendants. It was hot intended to include any other persons ; for although the second section speaks of her family, by the third section the allotment is vested in the widow for her own use and the use of her children. What may be a reasonable allowance, cannot be precisely defined. No certain fule can be laid down, as it must depend on the mode of life of the family, and the situation of the estate. That allowance, u this case, is so far beyond bounds,—so palpably extravagant and bottomed on such a wrong construction of the law*—that it must be set aside and a new one made.